# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAELA ARREGUIN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | ) 1:08-cv-00744-SMS<br>)<br>) DECISION AND ORDER DENYING<br>) PLAINTIFF'S SOCIAL SECURITY<br>) COMPLAINT (DOC. 2)<br>)<br>) ORDER DIRECTING THE ENTRY OF<br>) JUDGMENT FOR DEFENDANT MICHAEL J.<br>) ASTRUE, COMMISSIONER OF SOCIAL<br>) SECURITY, AND AGAINST PLAINTIFF<br>) RAFAELA ARREGUIN<br>) |

Plaintiff is represented by counsel and is proceeding with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable

---

[1] On June 25, 2008, the Honorable Lawrence J. O'Neill reassigned the case to the undersigned Magistrate Judge for all purposes.

Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On May 29, 2001, Plaintiff, born on January 24, 1964, applied for a period of disability and disability insurance benefits (DIB), alleging disability since March 10, 2000, due to a broken hip, pelvis, and left ankle, and resulting pain and inability to stand or sit for very long (A.R. 87, 91.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and testified and appeared at, a hearing before the Honorable James P. Berry, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on December 2, 2002. Plaintiff had the assistance of counsel. (A.R. 60, 67, 13.) On January 29, 2003, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 13-20.) Plaintiff filed in this Court an action for judicial review of the decision, and pursuant to the parties' stipulation, the matter was remanded on February 26, 2004, for a new hearing and decision pursuant to sentence four of 42 U.S.C. § 405(g). (A.R. 367-68.)

A supplemental hearing was conducted on August 29, 2005, and February 23, 2006, before ALJ Berry. (A.R. 341, 575-97.) The ALJ issued a decision on September 26, 2006, denying Plaintiff's application. (A.R. 341-48.) After the Appeals Council denied Plaintiff's request for review on March 28, 2008 (A.R. 325-27), Plaintiff filed the complaint in this action on May 27, 2008. Briefing commenced on January 16, 2009, and was completed on March 17, 2009.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of

the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the

3

Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).

III. Disability

A. Legal Standards

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

4

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

B. Findings regarding Disability

The record reflects that Plaintiff suffered a fracture of her pelvis and left ankle in a collision with a motorcycle on March 10, 2000; Plaintiff received hardware for her ankle and underwent open reduction and internal fixation of the pelvic

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

fracture on March 20, 2000. (A.R. 182, 229, 119.) Plaintiff underwent physical therapy, and by May 2000, she reported to Dr. Billys that she walked with a walker; Dr. Billys prescribed a cane, and physical therapy notes reflect that Plaintiff still required a cane for ambulation on September 26, 2000. (A.R. 126, 312.) In June 2000, Dr. Billys noted that Plaintiff's incisions were well-healed; she had full range of motion of the ankle without pain, a slight decrease in internal and external rotation of the lower extremities, with motor power of 5-/5. (A.R. 311.) By late July 2000, Dr. Billys reported that Plaintiff had managed reasonably well since her last visit and demonstrated good healing and acceptable alignment of the fractures; in one area a screw in the ankle was prominent and causing local irritation, and he planned to remove it. (A.R. 310.) In November 2000, Dr. Billys reported continued good management of ambulation with mild tenderness of the trochanteric area, and full range of motion with some mild tenderness over the medial malleolus. (A.R. 308.) In February 2001, the hardware in Plaintiff's ankle and some of the hardware in her hip was removed. (A.R. 306, 140-42.) On May 11, 2001, apparently the last date of Plaintiff's treatment from Dr. Billys, it was noted that there was a three-eighths inch disparity in the length of her legs. Plaintiff was to continue with her walking program. (A.R. 304.) In January 2002, Dr. Billys wrote that Plaintiff had made a slow, progressive recovery and was "functional to a level of light work with no repetitive (sic) and lifting, and a 15 to 20 pound occasional lifting and carrying restriction." (A.R. 303.)

Here, the ALJ concluded that Plaintiff had severe

impairments of status post pelvic fracture and left ankle
fracture that did not meet or medically equal a listed
impairment; Plaintiff had the residual functional capacity (RFC)
to lift and carry fifteen to twenty pounds occasionally and ten
pounds frequently and to stand, walk, and sit six hours each in
an eight-hour workday. (A.R. 344.) The ALJ concluded that through
the date last insured, Plaintiff's past relevant work (PRW) as an
agricultural sorter did not require the performance of work-
related activities precluded by Plaintiff's RFC, and thus
Plaintiff was not under a disability at any time from March 10,
2000, the alleged onset date, through March 31, 2001, the date
the ALJ found that Plaintiff was last insured. (A.R. 346-47.)
Plaintiff does not challenge the ALJ's finding concerning the
date last insured.[3]

IV. <u>Findings concerning Subjective Complaints</u>

The ALJ made the following findings:

> When the previous decision was issued in this case,
> the claimant's subjective complaints were evaluated
> and found only partially credible. The claimant only
> testified briefly at the hearings held after the case
> was remanded as the primary issue was the relative weight
> to be given to the various medical opinions in this
> case. She did state that she still has pain in her
> hip, leg, and ankle, that her legs are weak, and that her
> left foot is always numb. She said that she can
> only lift 10 pounds, stand 15 minutes at a time and two
> hours in a workday, sit 5 minutes at a time and one
> hour in a workday, walk one block, and never bend or
> squat. She takes Tylenol with codeine and Motrin for
> pain (Exhibit 7E, page 1). She denied doing much in
> the way of household chores other than cooking
> occasionally. She also said she does not attend church.

[3] It is Plaintiff's burden to prove that her disability began on or before the date she was last insured for disability insurance benefits under Title II of the Act, or her "date last insured." <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1458 (9th Cir. 1995). If a claimant was not disabled on the last day the claimant was insured under the Act, the claimant cannot recover disability benefits for a new period of disability with an onset date after the expiration of insured status. <u>Id.</u>

The current testimony differs in several key respects from her testimony at the first hearing on December 2, 2002. At that time she said she was able to stand for one hour at a time and sit for two hours a day. She also said that her activities included cooking, washing dishes, washing clothes, attending church, and visiting with others both inside and away from her home. Clearly either her condition has worsened since December 2002 or she is inconsistent in her statements regarding her activities and limitations. In either case, her current testimony would not support a finding of additional limitations in her residual functional capacity on and before March 31, 2001.

Plaintiff argues that the ALJ failed to give clear and convincing reasons for concluding that Plaintiff's subjective complaints were only partially credible.

Unless there is affirmative evidence that the applicant is malingering, then where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which the applicant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration,, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, given the absence of evidence of malingering, clear and convincing reasons were required.

The factors to be considered in weighing credibility are set forth in the regulations and pertinent Social Security rulings. They include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives

or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ...When evaluating the credibility of an individual's
> statements, the adjudicator must consider the entire
> case record and give specific reasons for the weight

9

given to the individual's statements.

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

Here, the ALJ specified Plaintiff's precise subjective complaints in the decision. (A.R. 347.)

The ALJ clearly considered whether the objective medical evidence was consistent with Plaintiff's complaints. He noted that the record reflected that treating orthopedic surgeon Dr. Billys never restricted Plaintiff's sitting, standing, or walking, and Dr. Billys encouraged her to continue with her walking program in his last treatment record of May 11, 2001. (A.R. 345.) The ALJ considered the scarcity of abnormal findings by March 2001.

Substantial evidence supports these statements. Dr. Billys' records from November 2000 through March 2001 reflect that in November 2000, Dr. Billys found no pain with range of motion of the hip, full range of motion with mild tenderness over the medial malleolus with respect to the ankle, and good position of

10

the hardware; Plaintiff managed well with ambulation with some mild trochanteric pain. By March 2001, Plaintiff complained of soreness in her ankle and right hip, but the incisions were well healed, and there was full range of motion in the ankle. (A.R. 303-04, 306-08.) Dr. Billys informed the ALJ by letter dated September 16, 2005, that Plaintiff had no follow-up visits since May 11, 2001, and thus it was not possible for Dr. Billys to comment on Plaintiff's later functionality. (A.R. 560.)

Likewise, the ALJ relied on Plaintiff's report in May 2000 to her physical therapist, Bryan Pacillas, that she tolerated sitting for two or three hours. (A.R. 345, 159.) The ALJ expressly concluded that considering his report and treatment records, there was no basis to conclude that Dr. Billys intended to limit Plaintiff's sitting, standing, or walking. (A.R. 345.) The parties do not point out any evidence to the contrary.

The ALJ explored the pertinent record of treatment from Dr. Christopher Rodarte, a family practitioner who treated Plaintiff before and after her injuries of March 2000, at Family Healthcare Network. (A.R. 346.) Dr. Rodarte had submitted a letter to the ALJ dated March 6, 2006, in which he stated that his treatment note from May 16, 2002, accurately reflected Plaintiff's complaints and level of functioning at the time it was written; since May 2002, Plaintiff's pain had steadily increased, and as of the date of the letter, Plaintiff had quite severe pain and difficulty in performing the activities of daily living, and it was expected that her pain would worsen. (A.R. 561.)

On May 16, 2002, Dr. Rodarte had noted Dr. Billy's light work restriction. (A.R. 450.) He examined Plaintiff, and the only

11

pertinent objective symptom noted was an absence of joint tenderness; he noted that Plaintiff's main concern was decreased strength in the abductor of her right leg, but she was otherwise doing well. He opined that Plaintiff had unspecified chronic problems resulting from her accident, and "we" might be able to give her some disability. (A.R. 450.)

The ALJ also noted that records from Family Healthcare Network revealed that Plaintiff did not complain to Dr. Rodarte of pain from her accident-related condition until April 2002, over a year after her insured status had expired. The records reveal an absence of such complaints until April 9, 2002, when she reported that she had pain in her lower back and legs. (A.R. 455.)

The record supports this reasoning. On April 25, 2002, Dr. Rodarte noted that Plaintiff had been advised by her orthopod that she could return to work, but she complained of decreased strength in her legs that caused prolonged standing to be difficult, as well as inability to sit for prolonged periods secondary to a possibly cracked pelvis; he planned to obtain surgical records to determine what operations had been done, and to refer her to a chiropractor. (A.R. 454.)

The inconsistency of the medical record with Plaintiff's claims of disabling pain and limitations was appropriately considered as one reason for the ALJ's findings concerning Plaintiff's subjective complaints. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which

may be considered with others, <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004); <u>Morgan v. Commissioner</u> 169 F.3d 595, 600 (9th Cir. 1999).

Further, it is appropriate to consider the inconsistency of a documented improvement with claims of constant pain. <u>Morgan v. Commissioner</u>, 169 F.3d 595, 599 (9th Cir. 1999). Likewise, a doctor's opinion that a claimant can work is appropriately considered. <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995).

In addition, inconsistencies between the Plaintiff's complaints and her reports to her physicians are appropriately considered. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts between the claimant's testimony and his conduct, or internal contradictions in the testimony. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004). Included in the factors that an ALJ may consider in weighing a claimant's credibility are the claimant's reputation for truthfulness; inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's daily activities or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

In addition to this reasoning, which was clear and convincing in force, the ALJ gave further consideration to inconsistencies over time in the testimony of the Plaintiff concerning her subjective complaints, and the ALJ made the express findings quoted above concerning the inconsistencies. The

13

ALJ noted several inconsistencies: 1) at the first hearing in December 2002, Plaintiff testified she could sit for two hours in a day, whereas at the later hearing in August 2005, she testified she could sit for five minutes at a time and one hour per day; 2) at the first hearing, Plaintiff testified that she could stand for one hour at a time, whereas her later testimony was that she could stand ten or fifteen minutes at a time and two hours total in a day; and 3) Plaintiff originally testified that she cooked, washed dishes, and clothes, attended church, and visited with others both inside and away from her home, whereas at the later hearing, she only cooked occasionally and did not attend church. (A.R. 347.) The record reflects the inconsistencies noted by the ALJ. (A.R. 43, 52-55, 582, 585-87.)

Plaintiff argues that the inconsistency is easily explained by a conclusion, supported by some medical evidence, that Plaintiff's condition worsened over the pertinent time, and thus the ALJ's reasoning lacked clear and convincing force. However, the ALJ did not merely note the inconsistency; rather, he stated that either her condition had worsened, or she was inconsistent in her statements regarding her activities and limitations; in either case, her testimony at the current hearing would not support a finding of additional limitations in her RFC on or before the date last insured, March 31, 2001. (A.R. 347.)

This reasoning is reasonably understood as a noting of the inconsistency of Plaintiff's statements, and further, of the possibility that Plaintiff's condition had worsened, and finally an observation that regardless of which was the case, the testimony did not support a more restricted RFC; if Plaintiff was

inconsistently relating her condition, it was an additional
reason for discounting her testimony; if Plaintiff's condition
had worsened, the testimony regarding Plaintiff's worsened
condition in 2005 was not sufficiently probative of her condition
before or during March 2001, when Plaintiff was last insured, to
further restrict Plaintiff's RFC.

This reasoning was appropriate in light of the established
principle that in order to obtain disability benefits, a claimant
must demonstrate a disability that existed prior to the
claimant's last insured date. The claimant bears the burden of
proof and must prove that he or she was either permanently
disabled, or subject to a condition which became so severe as to
disable a claimant prior to the date upon which a claimant's
disability insured status expired. Johnson v. Shalala, 60 F.3d
1428, 1432 (9th Cir.1995). It is established that it is
reasonable to place less weight on an expert opinion based on an
examination that is conducted after the date the claimant was
last insured and thus is remote in time from the period within
which the disability must be demonstrated. See, Macri v. Chater,
93 F.3d 540, 545 (9th Cir. 1996). In the same vein, it was
reasonable for the ALJ to conclude that Plaintiff's testimony
about her condition some four years after the date last insured
did not suffice to support a more restrictive RFC on the date
last insured.

Accordingly, the Court concludes that the ALJ stated clear
and convincing reasons, supported by substantial evidence, for
his findings concerning Plaintiff's subjective complaints.
/////

V. <u>Listed Impairment</u>

Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet listings 1.03 and 1.08.

Listing 1.03 involves reconstructive surgery or surgical arthrodesis[4] of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00(B)(2)(b), and return to effective ambulation did not occur, or is not expected to occur, within twelve months of onset. Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.03.

It is Plaintiff's burden to establish that his impairment met a listing. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987). Mere diagnosis of a listed impairment is not sufficient to sustain a finding of disability; there must also be the findings required in the listing. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 416.925(d). Generally, specific medical findings are needed to support the diagnosis and the required level of severity. 20 C.F.R. §§ 404.1525(c)-(d), 416.925(c). The Commissioner is not required to state why a claimant failed to satisfy every different section of the listing of impairments; rather, it is sufficient to evaluate the evidence upon which the ultimate factual conclusions are based. Otherwise, an undue burden would be put on the social security disability process. <u>Gonzales v. Sullivan</u>, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

Here, the ALJ did not expressly evaluate Plaintiff for listings 1.03 or 1.08. However, listing 1.03 requires an

---

[4] "Arthrodesis" is the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells. <u>Dorland's Illustrated Medical Dictionary</u> (28th ed. 1994) p. 141.

inability to ambulate effectively, which is in turn defined as extreme limitation of the ability to walk, that is, an impairment that interferes very seriously with the person's ability independently to initiate, sustain, or complete activities, or having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device or devices that limit the functioning of both upper extremities. Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b)(1). To be able to ambulate effectively, a person must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living and to travel without assistance to and from a place of employment; thus, ineffective ambulation includes but is not limited to the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, inability to use standard public transportation, or to carry out routine ambulatory activities such as shopping and banking, or climb a few steps at a reasonable pace with the use of a single handrail. Id. at §1.00(B)(2)(b)(2). The inability may be for any reason, including pain, and must have lasted, or be expected to last, for at least twelve months. Id. at § 1.00(B)(2)(a).

Here, the medical evidence does not reflect sufficient, specific findings to support a conclusion that Plaintiff lacked the ability to ambulate effectively. Plaintiff could ambulate with a cane by May 2000, and by November 2000, Dr. Billys noted good management of ambulation. Hence, Plaintiff's argument fails.

Plaintiff argues that she did not have the hardware removed

17

until May 2001, fourteen months after her accident. (Brief p. 7.) However, the record reflects that it was in February 2001 that the hardware was removed. Plaintiff has not met her burden to offer a theory of how the impairments combined to equal a listed impairment and to point to evidence that shows that her combined impairments equal a listed impairment. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

Plaintiff argues that she meets listing 1.08, which concerns soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00(M), directed toward the salvage or restoration of major function, with such major function not being restored or expected to be restored within twelve months of onset. Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.08. Plaintiff points to Dr. Billys's note of May 11, 2001, in which he noted that she had some weakness in her hip abductors that was more than likely due to the soft tissue trauma and surgical intervention. (A.R. 304.) However, Dr. Billys's note was followed with his notation that Plaintiff was assured that with time the condition would improve, and that she was to continue with her walking program. (Id.) Plaintiff has not pointed to evidence from which it might be inferred that the weakness did continue for the required duration with the required lack of restoration of major function.

Plaintiff points to the opinion of consulting, examining physician Dr. Mohinder Nijjar, who examined Plaintiff in September 2002, as evidence that the required functionality was missing for at least twelve months. The opinion of Dr. Nijar will

be discussed below, but the Court notes that it was not sufficient to establish that Plaintiff's condition met a listing.

The Court thus concludes that Plaintiff failed to show that the ALJ erroneously failed to find that her impairments met or equaled a listed impairment.

VI. Expert Opinions and Residual Functional Capacity

In concluding that Plaintiff could perform her past relevant work, the ALJ relied on the opinions of Dr. Billys. (A.R. 345.) Plaintiff argues that the ALJ erred in relying on the opinion of treating orthopedist Dr. Billys as support for the conclusion that Plaintiff had the RFC to perform Plaintiff's past relevant work of agricultural sorter. Further, the ALJ erred in rejecting the opinions of Drs. Nijjar and Mason. Specifically, with respect to the duration of Plaintiff's symptoms in connection with the analysis of listed impairments, Plaintiff argues that the findings and opinions of consulting examining physician Dr. Mohinder Nijjar and of orthopedic medical expert Dr. Mason established that Plaintiff's condition had not improved as of September 2002, and thus Plaintiff was disabled.

A. Dr. Mohinder Nijjar

On September 17, 2009, Dr. Nijjar, an orthopedist, completed a medical examination of Plaintiff, who complained of constant, moderate pain in the low back causing difficulty with various activities, including lifting and walking; weakness of the right lower extremity and numbness of both lower extremities; stiffness of the right hip and pelvis; and stiffness and pain in the left ankle. (A.R. 315-18.) The exam revealed a normal pelvis and sacroiliac joint. There was normal range of motion and no

localized deformity of the lumbar spine, with tenderness over the
sacrum and lumbosacral junction with mild to moderate muscle
spasm; and tenderness and neuromas in areas relating to the
saphenous and gluteal nerves. There was moderate effect on
flexion of the right hip and significant effect on extension,
adduction, and abduction, with rotations limited by fifty per
cent; there was a one-half inch shortening on the right as
compared with the left. As to the left ankle, there was some
abnormality of the bone and a neuroma which caused a tingling
sensation over the dorsum of the foot, and range of motion was
restricted by approximately ten per cent. Trendelenburg's sign
was positive, and she was unable to stand on the left lower
extremity, kneel, or squat. She could ambulate with a limp. (A.R.
317.) Dr. Nijjar diagnosed multiple trauma areas, status post
repair of pelvic fracture with open reduction and internal
fixation, fracture of the acetabulum, bilateral superior/inferior
pubic ramie fractures, and left ankle fractures. He opined that
considering the loss of function of the hip and pelvis,
Plaintiff's inability to stand on the left leg, and her inability
to perform her job duties,[5] it was his opinion that she was unable
to return to any type of labor job; she was unable to stand, sit
for any prolonged period, lift, or engage in other activities of
comparable physical effort. Further, she was in need of further
surgical intervention of the hip in the near future due to
unspecified degenerative changes she was likely to develop. (A.R.

---

[5] Plaintiff had reported to Dr. Nijjar that her constant, moderate low back pain became significant when she
lifted, walked, bent, turned, or twisted, so she had difficulty in continuing with those activities; her work before she
was injured required lifting plants, watering them, and planting. (A.R. 316.)

317-18.)

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. <u>Id.</u>; <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An ALJ can reject the opinion of an examining physician and adopt the contradictory opinion of a nonexamining physician only for specific and legitimate reasons that are supported by substantial evidence in the record. <u>Moore v. Commissioner of Social Security Administration</u>, 278 F.3d 920, 925 (9th Cir. 2002) (quoting <u>Lester v. Chater</u>, 81 F.3d at 830-31).

The ALJ assigned no weight to Dr. Nijjar's opinion, reasoning that he only examined Plaintiff once, and his single examination of Plaintiff occurred almost eighteen months after Plaintiff's insured status expired; thus, it did not outweigh the objective findings of Dr. Billys or his opinion, which concerned Plaintiff's RFC through the point that her insured status expired. (A.R. 346.) The ALJ stated that Dr. Nijjar's opinion concerning Plaintiff's inability to work at the time of the examination was not relevant to the issue to be decided. (<u>Id.</u>)

Plaintiff cites <u>Smith v. Bowen</u>, 849 F.2d 1222 (9th Cir. 1988) for the proposition that Dr. Nijjar's opinion was necessarily relevant. In that case, the court adopted the view of other circuits that medical evaluations made after the expiration of a claimant's insured status can be and generally are relevant to an evaluation of the condition of the claimant before his insured

status expired. <u>Id.</u> at p. 1225-26. However, the Court is mindful of the variety and breadth of factual situations arising in the context of a court's determination of disability based on post-expiration evidence. Circumstances can include situations, as in <u>Smith v. Bowen</u>, in which later medical evidence clearly supported disability based on independent evidence of the existence of identical functional limitations before the date last insured. Other circumstances include instances of progress in medical knowledge, or issues involving retroactive determination of the extent of disability, as in the present case. Further, as previously noted, the remoteness of an examination may provide a specific and legitimate reason for rejecting an opinion based on the exam.

Here, the ALJ was not faced with a situation as in <u>Smith v. Bowen</u> in which there was an absence before the date last insured of contemporaneous expert evidence concerning the extent and medical basis of the claimant's disabling symptoms, which substantial evidence, ignored by the agency, had demonstrated existed before the date of onset. Instead, here the ALJ had considerable contemporaneous, objective evidence from a treating physician concerning the nature and extent of any disabling effects of the claimant's impairments during the actual period before expiration of the claimant's insured status. The ALJ did not fail to consider Dr. Nijjar's evidence; rather, he considered it and expressly weighed it relative to the other evidence in the record, and he concluded, considering all the circumstances, that it did not outweigh the solid, objective findings and specific opinion of the treating physician. In this respect, this case

differs from <u>McNabb v. Barnhart</u>, 340 F.3d 943 (9th Cir. 2003), also cited by Plaintiff. Because the record clearly reflects the ALJ's consideration and weighing of the evidence, the Court concludes that the ALJ in effect concluded that in view of all the circumstances of this case, the evidence was not significantly probative or pertinent, as distinct from its being necessarily irrelevant and thus beyond the scope of the ALJ's evaluation. In view of all the pertinent circumstances, including but not limited to the reliance of Dr. Nijjar on Plaintiff's own subjective characterizations of her abilities and capacities, the remoteness of Dr. Nijjar's examination from the time of expiration of insured status, and the apparently progressively worsening condition of Plaintiff after her date last insured, the Court concludes that the ALJ did not apply incorrect legal principles in this instance, and the ALJ's reasoning was specific and legitimate and was supported by substantial evidence.

Another reason articulated by the ALJ for placing no weight on Dr. Nijjar's opinion was that although Dr. Nijjar labeled his opinion as an "independent" medical exam, it was clearly obtained by Plaintiff's representative for purposes of litigating the claim. (A.R. 346.) Plaintiff argues that this reasoning was improper.

The purpose for which an opinion is provided is not a legitimate basis for evaluating the reliability of the report; however, evidence of the circumstances under which a report was obtained and its consistency with other records, reports, or findings could form a legitimate basis for evaluating the reliability of the report. The correct standard with respect to

23

an opinion's purpose is that in the absence of other evidence to
undermine the credibility of a medical report, the purpose for
which the report was obtained does not provide a legitimate basis
for rejecting it. Reddick v. Chater, 157 F.3d 715, 726 (9th Cir.
1998).

Here, in addition to the fact that Plaintiff's counsel
referred Plaintiff for the evaluation, the ALJ also relied on the
fact that Dr. Nijjar's exam was a single instance of contact with
Plaintiff and on the remoteness of the examination. The ALJ also
discounted Plaintiff's credibility with respect to her subjective
complaints. Given the presence of additional circumstances to
undermine the credibility of the report, it was not completely
inappropriate for the ALJ to consider the purpose for which the
opinion was obtained.

However, even if this factor were considered to be wholly
inappropriate, the relatively limited contact of the expert with
the claimant and the relative remoteness of the exam and
resulting lack of probative value of the opinion constituted
sufficiently substantial and legitimate reasons for placing no
weight on Dr. Nijjar's opinion; any error by the ALJ would not
affect the ultimate outcome of the case, and remand would not be
necessary. See, Batson v. Commissioner, 359 F.3d 1190, 1197 (9th
Cir. 2004); Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir.
2006).

B. Dr. Alanson Mason

In response to the ALJ's request, on May 31, 2006, Dr.
Alanson A. Mason, M.D., an orthopedic surgeon, reviewed medical
records and opined that Plaintiff could occasionally lift twenty

24

pounds, frequently lift ten pounds, stand and/or walk less than
two hours in an eight-hour workday, sit about six hours with a
requirement of periodical alternate sitting and standing, walk
about fifteen minutes at a time, and was restricted to limited
pushing and/or pulling in the lower extremities and was further
restricted by various postural limitations and the need to avoid
temperature extremes. (A.R. 562-74.) He opined that the earliest
date established by the medical evidence on which Plaintiff was
subject to each limitation was June 10, 2006. (A.R. 571.)

The ALJ gave no weight to Dr. Mason's opinion because all
the evidence the doctor cited in support of his opinion was
derived from exams performed in or after September 2002, and thus
the evidence was gathered at least eighteen months after the date
last insured. (A.R. 347.) Substantial evidence supports the ALJ's
conclusion. (A.R. 570, 561, 546-59, 406, 416, 420-21, 423, 429,
435, 439.) The foregoing analysis concerning the remoteness of
examinations in relation to the date last insured applies to this
instance of the ALJ's treatment of Dr. Mason's opinion. Further,
Dr. Mason himself identified June 10, 2006, as the date upon
which each limitation applied to Plaintiff.

Accordingly, the Court concludes that the ALJ stated a
specific, legitimate reason, supported by substantial evidence,
for his weighing of Dr. Mason's opinion.

C. <u>Dr. Billys</u>

Plaintiff argues that the ALJ misinterpreted the opinion of
treating orthopedic surgeon Dr. Billys when the ALJ characterized
his opinion of January 2002 as an opinion that Plaintiff was
"functional to a level of light work with a 15 to 20 pound

25

occasional lifting and carrying restriction...." (A.R. 345.) Plaintiff contends that Dr. Billys's opinion was to the effect that Plaintiff could lift and carry up to twenty pounds occasionally, but that Plaintiff could not perform any repetitive lifting, which is an activity required by the position of agricultural sorter, the work which the ALJ found that Plaintiff could perform. Plaintiff further argues that even sedentary work requires the ability frequently to lift and carry ten pounds. Thus, Plaintiff was disabled.

Here, the ALJ found that the performance of Plaintiff's past relevant work (PRW) as a fruit and nut sorter was consistent with the RFC of lifting and carrying fifteen to twenty pounds occasionally and ten pounds frequently, and to stand, walk, and sit six hours each in an eight-hour work day. (A.R. 344.)

In January 2002, Dr. Billys opined that Plaintiff had made a slow, progressive recovery and was "functional to a level of light work with no repetitive (sic) and lifting, and a 15 to 20 pound occasional lifting and carrying restriction." (A.R. 303.)

The opinion of Dr. Billys was arguably ambiguous in view of the uncertain and ungrammatical reference to "no repetitive and lifting." It is possible that the ALJ mean to restrict Plaintiff from repetitive lifting, although from the remainder of the doctor's statement, it clearly appears that occasional lifting and carrying of fifteen to twenty pounds was appropriate, and occasional lifting is in itself arguably repetitive. "Occasionally" means occurring from very little up to one-third of the time. Soc. Sec. Ruling 83-10 at 5.

The Court understands that to the extent that medical

26

evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999).

However, even if the doctor meant to preclude more frequent lifting and carrying, the record contains substantial evidence to support a finding that Plaintiff could perform her past relevant work of agricultural sorter.

Light work is defined by 20 C.F.R. § 404.1567(b) (DIS) and 20 C.F.R. § 416.967(b)(SSI) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

At step four of the sequential disability analysis, the claimants have the burden of showing that they cannot perform their PRW. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). To be able to perform one's PRW, a claimant must be able to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Pinto v. Massanari, 249 F.3d at 845; Soc. Sec. Ruling 82-61.

Plaintiff testified in the first and second hearings about her jobs in the packing sheds, where she would pick rotten fruit

out of the belt and sometimes would pack. She would have to move the boxes, which weighed about thirty pounds, once they were filled from a table and stack them. (A.R. 57.)

The VE at the first hearing clarified that Plaintiff had testified as to two different jobs: agricultural produce sorter, which was light work and unskilled; and agricultural produce packer, which was medium and unskilled. (A.R. 57.) She had two other jobs, fruit harvest worker, which was medium and unskilled; and horticultural worker II, which was heavy and unskilled work. (Id.) The VE testified that one with an RFC to lift and carry fifteen to twenty pounds occasionally, and ten pounds frequently, and to stand, walk, and sit six to eight hours, could perform the job of agricultural produce sorter. (A.R. 58-59.)

The testimony of the VE at the second hearing was consistent with respect to the identity of Plaintiff's jobs, with an additional position that the VE identified as nut sorting done by Plaintiff in 1995, which was light and unskilled. (A.R. 589.) At the third hearing, the VE testified that Plaintiff could perform the jobs of fruit sorting and nut sorter, both of which were at the light level. (A.R. 595.)

In a work history report of Plaintiff dated June 12, 2001, Plaintiff stated that in her job of nut sorter, she sorted walnuts on a conveyor belt, and removed cracked nuts and debris; there was no lifting or carrying on the job, and the heaviest weight lifted was less than ten pounds, but she stood and handled small objects for eight hours. (A.R. 107.) The requirement of standing for eight hours would preclude Plaintiff's performance of such work.

Plaintiff also described in her report another job in which she removed walnuts with husks and debris, handled small objects for eight hours, stood for four hours and sat for four hours, and climbed for one hour; there was no lifting and carrying at that job, and the heaviest weight lifted was less than ten pounds. (A.R. 108.) She further described another job involving sorting fruit (peaches, plums, and nectarines), in which there was no lifting, and she removed unacceptable fruit. (A.R. 111.)

Even if, as Plaintiff contends, Dr. Billys had imposed some restriction on repetitive lifting, Plaintiff could still perform these two positions, as actually performed, in which there was no lifting or carrying.

Accordingly, the Court concludes that substantial evidence supported the ALJ's finding at step four.

VII. <u>Disposition</u>

Based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on the application of correct legal standards.

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Rafaela Arreguin.

IT IS SO ORDERED.

Dated:    **May 27, 2009**          **/s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE